IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–02147–EWN

DOLORES LUJAN,

      Plaintiff,

v.

JO ANNE B. BARNHART,

      Defendant.

_____

**ORDER AND MEMORANDUM OF DECISION**
_____

      This is a social security benefits appeal under 42 U.S.C. § 405(g) (2006). Plaintiff

Dolores F. Lujan challenges the final decision of the Commissioner of Social Security (the

"Commissioner"), denying her application for Social Security Disability Insurance benefits.

Jurisdiction is based on 42 U.S.C. § 405(g) (2006).

**FACTS**

*1.*     *Medical Evidence*

      Plaintiff was born on November 3, 1961. (Admin. R. at 61 [filed Dec. 17, 2002]

[hereinafter "Admin. R."].) She was forty years old at the onset of her alleged disability. (*Id.*)

Plaintiff graduated from high school in 1980, completed barber school in 1988, and completed

nursing assistant school in 1997. (*Id.* at 130.) She has worked in the vocationally relevant past as

a certified nursing assistant (CNA), telemarketer, clean room technician, and assembler. (*Id.* at

107.)  Plaintiff alleges an inability to work beginning April 22, 2002 due to pain from degenerative disc disease.  (*Id.* at 92.)

In March 2000, Plaintiff was involved in a motor vehicle accident.  (Pl.'s Opening Br. at 2 [filed Feb. 9, 2006] [hereinafter "Pl.'s Br."].)  As a result of injuries sustained in the accident, Plaintiff, over time, developed low back and leg pain.  (Admin. R. at 148.)  By early 2001, Plaintiff was undergoing trigger point injections and medicinal management, which gave her some relief from pain.  (*Id.* at 154–75.)  However, clinical notes from April 2001 show Plaintiff complained of low back and lower extremity pain ranging from level three to level eight on a scale of one to ten.  (*Id.* at 172–75.)

Beginning in May 2001, Plaintiff took a nearly year-long hiatus from treatment.  (*Id.* at 171.)  In April of 2002, the month Plaintiff ceased working and allegedly became disabled, Plaintiff returned emergently to the care of her treating physician, Julius J. Budnick, M.D. (*Id.*)  From April 2002 to February 2003, and in January 2005, Plaintiff complained of moderate to severe low back and lower extremity pain.  (*Id.* at 154–71, 202.)  Dr. Budnick noted Plaintiff had "standing [and] walking intolerance with increased severity[,] duration[, and] frequency of complaints," as well as "recurrent pain [and] discomfort throughout the lumbar spine."  (*Id.* at 171, 202.)  Further, Plaintiff claimed she was "unable to work as a result of recurrent[,] severe pain."  (*Id.* at 170.)

Multiple images of Plaintiff's lumbar spine revealed broad-based disc bulging, internal disc disruption, disc leakage, and mild bulging, as well as suggested contact with nerve roots.  (*Id.* at 152, 178–80, 201.)  In April 2002, Dr. Budnick limited Plaintiff to light-duty work.  (*Id.* at 171.)

One month later, he stated "[s]he [was] unable to work until reevaluated in the office." (*Id.* at

170–71.)  In September of 2002, Dr. Budnick again restricted Plaintiff to "light duty" work, and

in October of that year, he concluded "she [was] unable to work until reevaluated in the office."

(*Id.* at 160, 163.)  Finally, Dr. Budnick returned Plaintiff to a "light duty" work restriction in

December 2002.  (*Id.* at 158.)

In late 2002, Dr. Budnick referred Plaintiff to a spine clinic, where Plaintiff was treated by

James M. Bee, M.D., a consulting orthopedic surgeon, for degenerative disc disease.  (*Id.* at

148–52.)  During a clinical visit with Dr. Bee, he wrote:

> [Plaintiff's] life is limited in the fact that she is unable to pick up her grandchild.
> She can not [sic] participate in her previous hobbies of hunting, fishing, and
> camping.  All of these activities are limited secondary to her back pain.  At this
> time, her goals are to try [to] decrease her back pain to the point where she is able
> to return to work.

(*Id.* at 148.)  Dr. Bee also noted Plaintiff experienced "[s]ignificant muscle pain, joint pain,

swelling in arms and legs, back pain, [and] spasms," as well as "[b]alance problems, numbness[,]

memory problems[, and] weakness."  (*Id.* at 148–49.)  Physical examination revealed a twenty-

pound weight gain, normal muscle tone, mild pain at the extreme ranges of motion, normal gait,

negative straight leg raises, and the ability to perform heel-to-toe walking and single heel raises.

(*Id.* at 149–50.)  Radiographic exams and diagnostic studies revealed "subtle scoliosis," mild,

broad-based disc bulging, and evidence of disc fissuring with leakage at two vertebrae.  (*Id.* at

150.)  Dr. Bee and Plaintiff discussed several surgical and non-surgical treatment options, and

Plaintiff expressed an interested in undergoing operative treatment.  (*Id.*)

Progress notes from April 2002 through April 2003 document that numerous physical examinations of Plaintiff revealed a limited range of motion in her back, as well as diffuse tenderness. (*Id.* at 154–71, 202.)  The notes also revealed full motor strength in Plaintiff's extremities and no loss of sensation. (*Id.*)  Plaintiff was treated with trigger point injections, pain medication, muscle relaxants, and physical therapy. (*Id.* at 154–71, 202.)  Although Dr. Budnick reported that Plaintiff "feels she benefits" from these treatments, in February of 2003, the doctor concluded that "[t]o date, she has had poor response to anti-inflammatories, muscle relaxants, physical therapy, [and] epidural steroid injections." (*Id.* at 156.)  In early 2003, Dr. Budnick discussed several surgical options that Plaintiff refused. (*Id.* at 157.)  However, Plaintiff agreed to undergo a Botox injection and reported "low grade" improvement in pain following the injection. (*Id.* at 154.)

In February 2003, Plaintiff completed a daily activity and pain questionnaire in conjunction with her application for disability benefits. (*Id.* at 115–22.)  She described worsening, chronic, daily pain in her back and lower extremity that prevented her from sitting, bending, lifting, or standing for long periods of time. (*Id.* at 115.)  Plaintiff asserted she was rarely able to participate in social gatherings and could not pick up or play with her grandchildren. (*Id.* at 115–22.)  Additionally, she claimed to have experienced serious sleeping problems for over twelve months. (*Id.* at 119.)  Plaintiff stated she continued to do household chores, including laundry, cooking, and cleaning; although, her husband assisted in many of these activities. (*Id.* at 118.)  Because of her back pain, Plaintiff claimed she had to pace herself in doing these chores and sometimes could not complete them on the day planned. (*Id.*)

In August of 2003, a state agency decision maker, who was not a physician, assessed Plaintiff as capable of: (1) lifting and carrying twenty pounds occasionally; (2) lifting and carrying ten pounds frequently; (3) standing and/or walking three to four hours in an eight-hour workday; (4) sitting six hours in an eight-hour workday; (5) pushing and pulling in an unlimited way, other than the lifting and carrying restrictions; (6) climbing, stooping, crouching, and crawling occasionally; and (7) reaching, handling, and fingering without limitation. (*Id.* at 183–89.) The state agency decision maker also found Plaintiff should avoid concentrated exposure to hazards, such as machinery and heights. (*Id.* at 187.)

In late 2003, Plaintiff underwent a disc nucleoplasty, a minimally invasive procedure used to decompress discs and relieve pressure exerted by the discs on the nearby nerve root. (*Id.* at 198, 254–55.) Between January 15, 2004 and March 4, 2004, Plaintiff attended physical therapy five times. (*Id.* at 195.) The physical therapist reported that Plaintiff cancelled or failed to show up to multiple appointments, and on her last visit "state[d] she was simply having muscle soreness." (*Id.*) Further, explained the physical therapist, "it is expected that [Plaintiff] is doing well with her rehabilitation," as well as her "home exercise program[,] and need[ed] no further physical therapy." (*Id.*)

In July 2004, Dr. Budnick completed a medical assessment of Plaintiff's ability to do work-related activities. (*Id.* at 192–94.) He opined that, given a five-day per week, eight-hour per day job, Plaintiff had the following limitations due to her back pain: (1) must lie down at least fifteen minutes every two hours; (2) must miss more than four days of work per month; (3) would be unproductive due to her pain at least one hour each day; (4) would be limited to standing or

sitting for fifteen minutes before needing to lie down; (5) would be limited to lifting and carrying

no more than five pounds; (6) should avoid carrying, climbing, balancing, stooping, crouching,

kneeling, and crawling as much as possible; (7) should avoid heights, moving machinery, and

extreme temperatures; and (8) can reach, handle and finger occasionally.  (*Id.*)

**2.      *Procedural History***

On April 21, 2003, Plaintiff filed an application for disability insurance benefits.  (*Id.* at

76–78.)[1]  On August 5, 2003, the Social Security Administration denied Plaintiff's application.

(*Id.* at 205–13.)  On September 17, 2003, Plaintiff requested a hearing before an administrative

law judge ("ALJ").  (*Id.* at 47.)  On February 2, 2005, the ALJ held a hearing, at which Plaintiff

and a vocational expert ("VE") testified.  (*Id.* at 245–57.)

Plaintiff testified that her back problems were triggered by a March 22, 2000 automobile

accident.  (*Id.* at 249.)  Soon after the accident, Plaintiff stated, she was able to return to her work

as a CNA.  (*Id.*)  By April 2002, however, Plaintiff claimed, she was no longer able to carry out

her duties as a CNA because of her pain.  (*Id.* at 250.)  Plaintiff also opined she would not have

the capacity to fulfill the duties of a telemarketer, a job she had held in the past.  (*Id.* at 250–51.)

Specifically, she stated she would not be able to meet the requirements of sitting for an extended

period of time, particularly without the opportunity to lie down when needed.  (*Id.*)  Further,

_____

[1]Plaintiff filed an initial application on December 17, 2002, claiming an onset date of March 22, 2000.  (*Id.* at 61–63.)  This application was denied on March 12, 2003.  (*Id.* at 37–41.) Without objection by Plaintiff and pursuant to 20 C.F.R. § 404.906(b) (2006), this application was not reconsidered because Plaintiff's records showed earnings in 2001 and 2002.  (*Id.* at 248–49.)

Plaintiff testified she was not capable of any type of full-time work because of her pain, medication, and difficulty with bending, standing, and sitting for long periods of time. (*Id.* at 254.) Finally, Plaintiff claimed that at least half her days were "bad days," meaning she needed increased medication and more frequent supine resting. (*Id.*)

Martin Rauer testified as the VE at the hearing. (*Id.* at 251–253.) The VE classified Plaintiff's past work as follows: (1) a clean-room technician was sedentary; had no sit/stand option; and had a specific vocational preparation ("SVP")[2] level of three; and (2) a telemarketer was sedentary; had a sit/stand option; required occasional reaching, handling, and fingering; and had an SVP level of three. (*Id.* at 252.) The VE further testified that an individual limited to lifting no more than five pounds, who needed to avoid all posturals as much as possible, and needed to completely avoid dangerous machinery, heights, and temperature extremes would not be precluded from work as a telemarketer. (*Id.* at 252–53.)

On February 14, 2005, the ALJ issued his decision. (*Id.* at 27–32.) He determined Plaintiff was not disabled within the meaning of the Social Security Act, because she retained the residual functioning capacity ("RFC") to perform her past relevant work as a telemarketer. (*Id.* at 31–32.) In reaching his conclusion, the ALJ first found that Plaintiff had not engaged in substantial gainful activity since April 22, 2002. (*Id.* at 31.) Next, the ALJ determined that Plaintiff's degenerative disc disease constituted a medically determinable, severe impairment.

---

[2]SVP is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dikeman v. Halter*, 245 F.3d 1182, 1186 n.2 (10th Cir. 2001) (citation and internal quotation marks omitted).

(*Id.*)  Despite its severity, the ALJ determined that the impairment was not sufficiently severe to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations Number 4.  (*Id.*)  Additionally, the ALJ determined that "[Plaintiff's] testimony was not fully persuasive regarding her symptoms and resulting limitations."  (*Id.*)

Based on the evidence presented, the ALJ concluded that Plaintiff retained the RFC to "perform sedentary work; with a five pound lifting limitation; with an option to sit or stand, as needed; with avoidance of posturals as much as possible; with occasional reaching, handling or feeling; with avoidance of heights, dangerous machinery and temperature extremes."  (*Id.* at 31–32.)  In accord with this RFC, the ALJ determined that Plaintiff could perform her past relevant work as a telemarketer, and therefore was not disabled at any time since April 22, 2002.  (*Id.* at 32.)

On July 1, 2005, Plaintiff requested a review of the ALJ's decision.  (*Id.* at 10.)  The Appeals Council declined to review the ALJ's decision, making it the final administrative decision for the purposes of judicial review.  (*Id.* at 6–9.)  On October 26, 2005, Plaintiff filed a complaint in this court challenging the Commissioner's denial of disability insurance benefits.  (Compl. [filed Oct. 26, 2005].)  On February 9, 2006, Plaintiff filed her opening brief.  (Pl.'s Br.)  The Commissioner filed a response brief on March 15, 2006.  (Def.'s Resp. Br. [filed Mar. 15, 2006] [hereinafter "Def.'s Resp."].)  Plaintiff did not file a reply.  This matter is fully briefed and ripe for review.

## ANALYSIS

### 1.   *Standard of Review*

Section 405(g) of the Social Security Act establishes the scope of this court's review of

the Commissioner's denial of disability insurance benefits.  *See* 42 U.S.C. § 1383(c)(3) (2006)

(incorporating review provisions of 42 U.S.C. § 405[g]).  Section 405(g) provides, in relevant

part:

> The findings of the Commissioner of Social Security as to any fact, if supported by
> substantial evidence, shall be conclusive, and where a claim has been denied by the
> Commissioner of Social Security or a decision is rendered under subsection (b) of
> this section which is adverse to an individual who was a party to the hearing before
> the Commissioner of Social Security, because of failure of the claimant or such
> individual to submit proof in conformity with any regulation prescribed under
> subsection (a) of this section, the court shall review only the question of
> conformity with such regulations and the validity of such regulations.

*Id.* § 405(g) (2006).  Thus, this court's review is limited to determining whether the record as a

whole contains substantial evidence supporting the Commissioner's decision.  *See id.*; *Hamilton v.*

*Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992).  The court must

uphold the Commissioner's decision if it is supported by substantial evidence.  *See Dollar v.*

*Bowen*, 821 F.2d 530, 532 (10th Cir. 1987).  This court cannot re-weigh the evidence nor

substitute its judgment for that of the ALJ.  *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir.

1987).  That does not mean, however, that my review is merely cursory.  To find that the ALJ's

decision is supported by substantial evidence, the record must include sufficient relevant evidence

that a reasonable person might deem adequate to support the ultimate conclusion.  *Frey v. Bowen*,

816 F.2d 508, 512 (10th Cir. 1987).  A decision is not based on substantial evidence if it is

overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting

it. *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985).  The ALJ's decision is also subject to

reversal for application of the wrong legal standard. *Bernal v. Bowen*, 851 F.2d 297, 299 (10th

Cir. 1988); *Frey*, 816 F.2d at 512.

**2.     *Evaluation of Disability***

To qualify for disability insurance benefits under the Social Security Act, a claimant must

meet the insured status requirements, be less than sixty-five years of age, and be under a

"disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).  The Social Security Act

defines a disability as an inability "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 1382c(a)(3)(A) (2006).  In proving his disability, a claimant must make a

*prima facie* showing that he is unable to return to prior work he has performed.  *Huston v.*

*Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).  Once the claimant meets that burden, the

Commissioner must demonstrate that the claimant can do other work activities and that the

national economy provides a significant number of jobs which the claimant could perform.  *Frey*,

816 F.2d at 512.

The Commissioner has established a five-step process to determine whether a claimant

qualifies for disability insurance benefits.  *See* 20 C.F.R. § 404.1520 (2006); *Bowen v. Yuckert*,

482 U.S. 137, 140–42 (1987) (describing five-step analysis).  A claimant may be declared disabled

or not disabled at any step, and, upon such a determination, the subsequent steps may be

disregarded.  *See* 20 C.F.R. § 404.1520(a) (2006); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  First, the claimant must demonstrate that he is not currently involved in any substantial gainful activity.  20 C.F.R. § 404.1520(b) (2006).  Second, the claimant must show a medically severe impairment (or combination of impairments) which limits his physical or mental ability to do basic work activities.  *Id.* § 404.1520(c).  At the third step, if the impairment matches or is equivalent to established listings, then the claimant is judged conclusively disabled.  *Id.* § 404.1520(d).  If the claimant's impairments are not equivalent to the listings, the analysis proceeds to the fourth step.  At this stage, the claimant must show that the impairment prevents him from performing work he has performed in the past.  *See Williams*, 844 F.2d at 751.  If the claimant is able to perform his previous work, he is not disabled.  20 C.F.R. § 404.1520(e) (2006); *Williams*, 844 F.2d at 751.  This step requires a three phase analysis.

> In the first phase, the ALJ must evaluate a claimant's physical and mental [RFC], and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work.  In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.  At each of these phases, the ALJ must make specific findings.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted).  The fifth step requires the Commissioner to demonstrate that the claimant has the RFC to perform other work based on the claimant's age, education, past work experience, and evidence that such work exists in significant numbers in the national economy.  *See* 20 C.F.R. § 404.1520(f) (2006); *Williams*, 844 F.2d at 751.

### 3.      *Disability Determination*

Plaintiff alleges the ALJ's disability determination was not supported by substantial

evidence, because the ALJ failed to give appropriate legal deference to the opinion of one of

Plaintiff's treating physicians regarding Plaintiff's work-related limitations.  (Pl.'s Br.)  It is well-

established that an ALJ is required to give controlling weight to a treating physician's well-

supported opinion, so long as it is not inconsistent with other substantial evidence of record.  *See*

20 C.F.R. § 404.1527(d)(2) (2006); *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004)*;*

*Frey*, 816 F.2d at 513.  If the ALJ decides not to give a treating physician's opinion controlling

weight, the ALJ must consider a series of factors in determining the amount of weight to give the

opinion, including the degree to which the opinion is supported by relevant evidence and the

opinion's consistency with the record as a whole.  *See* 20 C.F.R.§ 404.1527(d)(2)–(6) (2006);

*Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).  Should an

ALJ choose to disregard the opinion of a treating physician, the ALJ must set forth "specific,

legitimate reasons" for doing so.  *Hamlin*, 365 F.3d at 1215.

In the instant case, the ALJ found that the following restrictions imposed by Dr. Budnick[3]

on Plaintiff's work abilities were "well-supported by the record:" (1) lifting no more than five

pounds; (2) standing, walking, or sitting for no more than fifteen minutes before needing to

change positions; (3) avoiding most postures, heights, moving machinery, and temperature

extremes; and (4) no more than occasional reaching, handling, and fingering.  (*Id.* at 30.)  The

---

[3]The Commissioner does not dispute that Dr. Budnick is one of Plaintiff's treating
physicians.  (*See* Def.'s Resp. at 11–13.)

ALJ found that the following restrictions imposed by Dr. Budnick on Plaintiff's work abilities were "not supported by the record:" (1) lying down fifteen minutes every two hours; (2) missing at least four days of work each month; and (3) being unproductive at least one hour per day when at work.  (*Id.*)  The ALJ explained his rejection of these portions of Dr. Budnick's opinion as follows:

> [T]he record indicates that [Plaintiff] has no findings which would normally accompany pain of a severity to support total incapacity from a back injury, such as numbness, tingling, weakness, reflex changes, or positive straight leg raises, and the physical therapist concluded that [Plaintiff's] pain complaints were muscular in nature.  Thus, the undersigned rejects . . . the extreme portions of Dr. Budnick's assessment.

(*Id.* at 30.)  I find that although the ALJ did articulate specific reasons for his rejection of portions of Dr. Budnick's opinion, those reasons are not legitimate, and thus do not constitute substantial evidence to support the ALJ's finding that Plaintiff retained the RFC to perform work as a telemarketer.[4]  *See Frey*, 816 F.2d at 515.

First, the ALJ's assessment that "numbness, tingling, weakness, reflex changes, or positive straight leg raises" normally accompany "pain of a severity to support total incapacity from a back injury," is nothing more than an unsupported lay opinion.  As such, it is plainly insufficient to overcome this circuit's requirement that the opinion of a treating physician be given controlling weight in the absence of contradictory record evidence.  *See Hamlin*, 365 F.3d at 1215; *Frey*, 816

---

[4]In making this determination, I state no opinion as to whether giving credence to the entirety of Dr. Budnick's assessment would render Plaintiff disabled within the meaning of the Social Security Act.  The ALJ did not question the VE regarding Plaintiff's work capabilities, assuming all of Dr. Budnick's restrictions.  (*See* Admin. R. at 251–53.)  Therefore, the effect of these restrictions is, as yet, unknown.

F.2d at 513.  "While the ALJ is authorized to make final decisions concerning disability, he cannot

interpose his own 'medical expertise' over that of a physician, especially when that physician is

the regular treating doctor for the disability applicant."  *Kemp v. Brown*, 816 F.2d 1469, 1476

(10th Cir. 1987).  Moreover, "'an ALJ may not make speculative inferences from medical reports

and may reject a treating physician's opinion outright only on the basis of contradictory medical

evidence and not due to his or her own credibility judgments, speculation or lay opinion.'"

*McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quoting *Morales v. Apfel*, 225

F.3d 310, 317 [3d Cir. 2000]).

    Although it may be true that "numbness, tingling, weakness, reflex changes, or positive

straight leg raises" normally accompany "pain of a severity to support total incapacity from a back

injury," there is no medical opinion of record to support this claim by the ALJ.  This court has no

doubt that the ALJ's opinion here is based on years of experience with social security disability

cases, many of which almost certainly involved claims of debilitating back pain.  Nevertheless,

presiding over disability cases does not a physician make.  Thus, the ALJ's rejection of portions of

Dr. Budnick's opinion "based upon [the ALJ's] own speculative lay opinion . . . [is] an improper

basis to reject the treating physician's opinion."  *Robinson v. Barnhart*, 366 F.3d 1078, 1083–84

(10th Cir. 2004).

    Additionally, before giving credence to his own lay opinion, the ALJ—at minimum—had a

duty to seek additional medical information.  *See Ragan v. Barnhart*, 89 F. App'x 160, 163 (10th

Cir. 2004) ("While lack of support is a legitimate reason to deny controlling weight to a

physician's opinion, the ALJ's finding of lack of supporting clinical findings triggered a duty to

seek further development of the record before rejecting the opinion.") (internal citations omitted); *cf. McGoffin*, 288 F.3d 1248, 1252 (10th Cir. 2002) (finding ALJ had a statutory duty to obtain additional information before determining a treating physician did not agree with the assessment he signed).  Social Security Regulations direct the ALJ to recontact medical sources, or—if that medical source cannot or will not provide the necessary findings—ask the plaintiff to attend one or more consultative examinations at the expense of the Social Security Administration.  20 C.F.R. § 404.1512(e), (f) (2006).  Surely, before relying on his own speculative medical findings, the ALJ should have sought additional clarification from a medical expert regarding typical symptoms of incapacitating back pain.

The only other reason the ALJ provided for rejecting portions of Dr. Budnick's opinion was that "[Plaintiff's] physical therapist concluded that [Plaintiff's] pain complaints were muscular in nature."  (Admin. R. at 30.)  Setting aside, for a moment, the question of whether the physical therapist's statement actually casts doubt on the accuracy of Dr. Budnick's assessment, it is clear that the contrary opinion of a physical therapist, standing alone, cannot serve as substantial evidence supporting an ALJ's decision to reject a treating physician's opinion.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (finding a single statement by a physical therapist was not "substantial evidence" against which a treating physician's opinion can be deemed inconsistent).  Social Security Regulations counsel that "medical opinions," on which an ALJ may rely in establishing whether a Plaintiff has a medically determinable impairment, are statements from "physicians and psychologists or other acceptable medical sources."  20 C.F.R. § 404.1527(a)(2) (2006).  "Other acceptable medical sources" include only: (1) licensed physicians;

(2) licensed or certified psychologists; (3) licensed optometrists; (4) licensed podiatrists; and (5)

qualified speech-language pathologists. *Id.* § 404.1513(a). Notably missing from this list are

physical therapists.

An ALJ may also look to "other sources," in addition to "acceptable medical sources," for

evidence of the severity of a plaintiff's impairment. *Id.* § 404.1513(d). These sources include, but

are not limited to "nurse-practitioners, physicians' assistants, naturopaths, chiropractors,

audiologists, and therapists." *Id.* Unsurprisingly, many circuits, including this circuit in several

unpublished opinions, have concluded that the opinion of a physical therapist is not considered a

"medical opinion," but only an "other source" on which the government can rely. *See Castro v.*

*Barnhart*, 119 F. App'x 840, 842 (8th Cir. 2005) ("[a] physical therapist is not an 'acceptable

medical source'"); *St. Clair v. Apfel*, No. 99-5063, 2000 U.S. App. LEXIS 11562, at *12 (10th

Cir. May 22, 2000) (same); *Komar v. Apfel*, No. 97-5125, 1998 U.S. App. LEXIS 341, at *5

(10th Cir. Jan. 9, 1998) (same); *Gatts v. Barnhart*, No. 02-4174-JAR, 2004 U.S. Dist. LEXIS

5508, at *23 (D. Kan. Mar. 25, 2004) (same); *Youney v. Barnhart*, 280 F. Supp. 2d 52, 59

(W.D.N.Y. 2003) ("the regulations are clear that a [physical] therapist's opinion is not considered

'medical evidence,' [but] only an 'other source' upon which the Commissioner can rely"). Based

on the plain language of the regulations, as well as the overwhelming case law in support, I find a

physical therapist is an "other source" within the meaning of 20 C.F.R. § 404.1513(d) (2006).

As an "other source," the opinion of a  "physical therapist[] . . . can be considered, but the

opinion is entitled to less weight than that accorded to the opinions of acceptable medical

sources." *Komar*, 1998 U.S. App. LEXIS, at *5; *see Gatts*, 2004 U.S. Dist. LEXIS 5508, at *24

("As an 'other source,' physical therapists' opinions are entitled to less weight than the opinions of acceptable medical sources."). Specifically, the opinions of physical therapists are accorded less weight than that of treating physicians, absent a showing that the treating physician's opinion is inconsistent with other substantial evidence of record. *See Castro*, 119 F. App'x at 842–43 (finding a physical therapist's opinion does not merit the controlling weight of a treating physician's opinion); *St. Clair*, 2000 U.S. App. LEXIS 11562, at *11 (noting that when weighing the opinions of medical personnel who are "not an acceptable medical source, the ALJ was not required to apply the treating physician rule"); *Dickerson v. Chater*, No. 96-1417, 1997 U.S. App. LEXIS 13157, at *5 (10th Cir. June 4, 1997) (citing *Diaz v. Shalala*, 59 F.3d 307, 313 (2d. Cir. 1995) (finding "other sources," such as occupational therapists and rehabilitation consultants, "do not qualify as treating physicians whose opinions are entitled to controlling weight").

In the end, the ALJ simply cannot rest his rejection of a treating physician's opinion solely on the inconsistent opinion of an "other source." "A single statement by a [physical] therapist . . . is not 'substantial evidence' against which a treating physician's opinion can be deemed inconsistent." *Youney*, 280 F. Supp. 2d at 59 (citing *Green-Younger*, 335 F.3d at 107.) Thus, in the instant case, the ALJ's reliance on a physical therapist's contrary opinion to reject a treating physician's assessment of Plaintiff does not constitute a "legitimate reason" for such rejection.[5]

---

[5]Even if the physical therapist's opinion could be found controlling, it is not even clear the opinion actually contradicts Dr. Budnick's assessment of Plaintiff's limitations. The fact that "on [Plaintiff's] last visit on [March 4, 2004,] she state[d] she was simply having muscular soreness," does not equate to an endorsement of Plaintiff's capacity to engage in substantial gainful activity. In fact, Plaintiff testified at her February 2005 hearing that a little less than half her days are "good days." (Admin. R. at 254.) Arguably, her last physical therapy visit marked one of her "good

In defending the ALJ's rejection of Dr. Budnick's opinion, the Commissioner completely
ignores the ALJ's actual stated reasons for the rejection. (Def.'s Resp. at 11–13.) Instead, the
Commissioner argues the ALJ's decision was properly based on: (1) inconsistencies in Dr.
Budnick's treatment notes; (2) findings on physical examination by Dr. Bee; and (3) Plaintiff's
confessed level of activity. (*Id.* at 12.) Although these rationales may conceivably support the
ALJ's decision to disregard portions of Dr. Budnick's opinion, this court rejects the
Commissioner's attempt to fashion "post-hoc rationalizations to explain the [ALJ's] treatment of
evidence when that treatment is not apparent from the [ALJ's] decision itself." *Grogan v.
Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005); *see Mercantile Tex. Corp. v. Bd. of Governors
of the Fed. Reserve Sys.*, 638 F.2d 1255, 1260 (5th Cir. 1981) (decision cannot be affirmed on the
basis of appellate counsel's post-hoc rationalizations for agency action). It is the ALJ's
undelegable duty to make his specific and legitimate reasons for rejecting a treating physician's
opinion clear on the record, and the ALJ's failure to do so may not be corrected by counsel. *See
Grogan*, 399 F.3d at 1263. Based on the foregoing, I conclude the ALJ erred in rejecting the
treating physician's 2004 assessment of Plaintiff's work limitations. In light of the treating
physician's restrictions, the lay opinion of the ALJ and the contradictory opinion of a physical

---

days."
     That being said, the fact that Plaintiff missed multiple physical therapy visits due to
cancellations or no-shows *may* suggest that she was not in enough pain to prioritize physical
therapy. (*See id.*) The ALJ, however, neither questioned Plaintiff about her reasons for missing
appointments nor proposed the missed appointments as a rationale for rejecting Dr. Budnick's
assessment. (*See id.* at 30.) Therefore, they cannot constitute a specific and legitimate reason
articulated by the ALJ for rejecting Dr. Budnick's opinion.

therapist do not constitute substantial evidence to support the ALJ's finding that Plaintiff retained the RFC to perform full-time work as a telemarketer. *See Frey*, 816 F.2d at 515.

**4.    Conclusions**

Based on the foregoing it is therefore:

ORDERED that the Commissioner's decision is REVERSED and REMANDED for proceedings consistent with this opinion.

Dated this 20th day of October, 2006.


BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge